# HIGH COURT of ERRORS and APPEALS, of *Pennsylvania*.

## September Sessions, 1784.

### TALBOT *qui tam*, &c. *versus* The COMMANDERS and OWNERS of three Brigs.*

THIS was an appeal from a decree in the *Admiralty* on the following case:—*Silas Talbot*, commander of the armed sloop *Argo*, belonging to, and in the service of these States, duly commissioned, sailed from *New-London*, in the State of *Connecticut*, the twenty-ninth of *August*, 1779, on a cruise. On the *fixth* of *September*, after an engagement of three hours, he took as prize upon the High Seas, an armed Letter of Marque vessel, called the *Betfey*, of two hundred tons burthen, with a valuable cargo, belonging to subjects of *Great-Britain*, not being inhabitants of *Bermuda*, and bound for *New-York*, then in possession of the *British* naval and land forces. He took the commander and eleven of the people out of the prize, leaving three in her, and put on board a Prize-master and eleven other hands, with instructions to proceed to *New-London*. The firing was heard, and the engagement for more than an hour seen by persons on board three Letter of Marque Brigs that had lately failed from *Philadelphia*. During the engagement the *Betfey* was perceived from the three Brigs, bearing towards them. Her surrender was also seen from on board them. The prize-master in obedience to his instructions, proceeded on his voyage in company with the *Argo* for *New-London*. Some time after the three Brigs

were

---

* For the decree in the *Admiralty* in this case, and the evidence upon which it was principally founded, I beg leave to refer the Reader to a small volume of Reports of Cases in the Admiralty of *Pennsylvania*, published by the Honorable *Francis Hopkinson, Esquire*, the Judge of that Court; and printed by *Dobfon* in *Philadelphia*. In this book will, likewise, be found several important decisions, questions of *Hypothecation*.

1784. were difcerned from on board the *Betfey*. Towards evening they chafed the *Argo* and *Betfey*. The next day, early in the morning, the prize being in tow of the *Argo*, the three Brigs were feen from on board the Prize and the *Argo*, chafing them. The Brigs approached faft under *Britifh* colours. Captain *Talbot* finding it impracticable for the prize to efcape, with a trumpet hailed her, directing the prize-mafter to throw off the rope, and lye too with the prize, until the three Brigs fhould come up with her, adding, that he with the *Argo* would run a little to leeward and lye too alfo— and that if the brigs fhould prove to be *American*, the prize-mafter fhould endeavour to obtain permiffion for the prize to come down by herfelf and inform him of the brigs being friends. In a fhort time the brigs came up, and from one or two of them under *Britifh* colours, the *Betfey* was fired at twice, fhe then bearing *Britifh* colours reverfed, according to the cuftom of prizes, and being in the latitude of 39 degrees 4 minutes, and the longitude of 71 degrees 24 minutes. When firft hailed, the people on board the *Betfey* anfwered, fhe was from *Montferrat*. Perfons from two of the brigs, one of which had fired at the *Betfey*, boarded her. Among thefe was W. D. from the laft mentioned brig. The commander of this brig was informed by the prize-mafter on board the *Betfey*, that fhe was a prize to the *Argo*, commanded by Captain *Talbot*; that the veffel then in fight was the *Argo*; that he was put on board the *Betfey* as prize mafter by Captain *Talbot*; he fhewed him his written inftructions as fuch; but, faid the *Betfey* had been taken three days before. W. D. from on board the *Betfey* told the faid commander, that the prize-mafter denied having feen the brigs the day before, or that fhe was then captured; but from every circumftance, and from the report of one of her *Englifh* failors, he was convinced, fhe was the fame veffel feen engaged the day before. On board the brig, to the commander of which this information was given, were a boatfwain and fail-maker, who had been taken by Captain *Talbot* about ten days before in a veffel from *London*, and fent by him prifoners to *Philadelphia*, and fhipped there. One of the perfons put into the *Betfey* by Captain *Talbot*, knowing them, mentioned this fact in converfation on board the faid brig, to W. D. The perfon thus put on board by Captain *Talbot* alfo faid, that the *Betfey* had been taken three days before. The papers on board the *Betfey* were examined by W. D. in behalf of the three brigs; and the number of names fpecified in the *Englifh* papers, was found to correfpond with the number of perfons then on board. From thefe papers it appeared, that fhe was a *Britifh* veffel bound from *Montferrat* to *New-York*. W. D. made feveral other examinations on board the *Betfey* on behalf of the three brigs, and in the courfe of them was informed by a feaman who belonged to her while poffeffed by the *Britifh*, that fhe was taken the day before. This failor alfo faid, fhe failed from *Montferrat*. Before W. D. left *Philadelphia*, he had heard in the coffee-houfe there, a few days before he failed, that the *Argo* a *New-England* privateer had taken the

the *Dublin* cutter, fitted out full of men of war's men. While 1783. these examinations were made, the two other brigs chafed the *Argo*, under all fail, upon which Captain *Talbot*, concluding they must have been *British* cruifers, made fail before the wind, and foon left them. The commanders of the three brigs took the prize-mafter and hands out of the *Betfey*, who were carried to *Spain*, except one or two of the leaft confiderable, and alfo took out of her two cannon, fmall arms, powder, ball, two coils of cordage, and fome other articles. They then put a perfon on board her as prize-mafter, and men from each of the brigs, with written orders, dated the 7th of *September* 1779, and figned by them all, directing him to " take charge of her as prize to the brigs *Achilles*, *Patty* and *Hibernia*; carry her into *Delaware*, *Chefapeak*, *Egg-Harbour* or *Bofton*, but to get her if poffible into *Delaware*, *Chefapeak*, or *Egg-Harbour*, for fear of the floop *Argo's* falling in with her, begging him to ftand to the fouthward that night, and ftrive hard for *Philadelphia*." Thefe orders were figned on board the brig, the commander of which had directed the examinations before mentioned on board the *Betfey*. The *Betfey* failed off clofe by the wind to the fouthward, was afterwards retaken, carried into *New-York*, and reftored to the former owners. On the 17th of *September*, 1779, Congrefs refolved, " that in confideration of the diftinguifhed merit of Colonel *Silas Talbot*, a commiffion of Captain in the navy be given him, and that the marine committee be directed to provide a proper veffel for him as foon as poffible." On the *firft* of *March*, 1780, Congrefs refolved, " that any intereft The United States may have in the capture of the *Betfey* by the floop *Argo*, Captain *Silas Talbot*, be relinquifhed to the faid Captain, and the officers, feamen, and marines, under his command at the time of the capture." On the 13th of *March*, 1780, Captain *Talbot*, quitam, &c. filed his bill in the Court of Admiralty for this State, againft the three brigs, their owners and commanders. Procefs iffued accordingly. On the 27th the owners came feverally before the Court, and entered into ftipulations for the performance of the decree. *Auguft* 29th, a Plea to the jurifdiction filed, " for that in cafes of *damages* to be affefed or recovered to make fatisfaction for a wrong or trefpafs to perfon or property, the profecutions ought to be in Courts of Common Law." Replication, " that the caufe of action was within the jurifdiction of the Admiralty." Plea difmiffed, *Refpondeant Oufter* awarded, and plea of *Not Guilty* filed. *July* 19th, 1783, decree, that the Libellants have and recover of the Refpondents £ 12,791. 5. 0. with Cofts, and on the 22d the Refpondents appeal.

The caufe was ably argued on feveral days, and now, at an adjourned feffions, held the 14th of *January* 1785, the PRESIDENT delivered the refolution of the Court.

DICKENSON, PRESIDENT:—There are two principal quefions concerning jurifdiction in this caufe.

N

1784.

*First.* Whether the Court of Admiralty for this State had jurifdiction?

*Second.* Whether this Court has jurifdiction!

The firft has been fub-divided into thefe *fecondary* queftions:

*First.* Could the Court of Admiralty for this State take cognizance as an *Inftance* Court, fuppofing this caufe not to be a caufe of *Prize ?*

*Second.* Did that Court take cognizance as a *Prize* Court ?

It is acknowledged by the Council for the Appellants, that if this is not a caufe of *Prize*, the Court of Admiralty might take cognizance as an *Inftance* Court, it being now fettled that damages may be affeffed in the Admiralty—if it was not for an objection arifing from the Act of Affembly for regulating and eftablifhing Admiralty jurifdiction in this State. By that Act the Judge of the Admiralty fhall " have cognizance of all controverfies, fuits, and pleas of maritime jurifdiction, *not cognizable at the common law*, and thereupon fhall decree as the maritime law, the law of nations, and the laws of this Commonwealth fhall require." The objection made, is, that the prefent controverfy *is cognizable at common law.*

It is manifeft from this Act, that in framing it, the legiflature took into confideration the *Englifh* ftatutes relating to things done upon the High feas, and particularly the ftatutes of the 13th of *Richard* the *fecond*, ch. 3, and 5, and the 2d of *Henry* the *fourth*, ch. 11. by which, " Admirals and their deputies are prohibited from medling with any thing done within the realm of *England*, but only with things done upon the feas, according to that which hath been duly ufed in the time of *Edward* the *third*," and it is " declared, that the Court of the Admiral hath no manner of conufance, power, or jurifdiction of any contract, plea or quarrel, or of any other thing done or rifing within the bodies of counties except in cafes of death or *Mayheme* done in great fhips being in the main ftream of rivers beneath the * points of the fame."

It is clear even from thefe cautions againft encroachments of the Admiralty upon the Courts of common law, and from the well-known difpute mentioned in *Cooke's* 4th *Inft.* that the jurifdiction of that court, as to " things done upon the fea," is acknowledged to be *proper:* and, that as to *them* the jurifdiction of the common law courts was *not proper*, but only acquired by a *Fiction* in fuppofing them to have been done in the fame county, when they were not. 4 *Inft.* 134 to 143. 3 *Blackft.* 43, 106, &c. *Fortefcue* de Laudibus 67. *et in notis.* The common law courts had a great advantage. They ufed it. There was no fuperior Court to *prohibit* them. They went beyond the " *Credo quia impoffible eft ;*" for they upon certain fuggeftions, *without* " *believing*" them, but *knowing* them to be both *falfe* and *impoffible*, affumed jurifdiction; and would
,not

---

* Doctor *Zouch*, in his " Jurifdiction of the Admiralty," p. 85. urges ftrong reafons againft this conftruction ; and in *Owen'* Reports, p. 122 it is faid by the Court, that the ftatute of the 15th of *Richard the* 2d. is mifprinted for the tranflator miftook bridges for points, that is to fay the Lands-En

not permit *evident truth* to be regarded. With fuch laboured inge- 1784.
nuity has the jurifdiction of common law courts, as to acts upon
the High Seas, been fuftained, to the great mortification of Sir
*Thomas Rydlye* and other learned Civilians, * the former, with much
commendation from the reft, very gravely undertaking to prove,
that a fhip could not fail in *Cheapfide* in the city of *London,*† the
place ufually affigned in fuggeftions, as the fcene of naval tranf-
actions.

Yet, notwithftanding thefe ftatutes, mariners have in *England*
been allowed to fue for wages in the Admiralty, upon contracts
made there within the body of a county, " againft the ftatute *ex-
prefly,*" as was held by the Judges, when that great man, Lord
Chief Juftice *Holt,* prefided in the King's Bench. *Salk* 33. The
reafons were, that the remedy was *eafier,* becaufe they could join
in the fuit, and *better,* becaufe the fhip would be anfwerable.

In the prefent cafe, the owners, mafters and failors of the three
brigs could not be jointly fued at common law. If they could not,
what a multiplicity of actions muft be brought. Suppofing the
owners, commander and men of the *Argo* could join in a fuit at
common law, one of them might deftroy the action by a ‡ releafe.
The veffels are not liable in the fame manner at common law, as
they are in a Court of Admiralty.

If the Court of Admiralty for this State cannot take cognizance
of things which courts of common law may draw into their cog-
nizance, it feems to have been nugatory in the legiflature to have
given that Court any other jurifdiction than in cafes of *Prize;* for
even in the cafe of wages, juftly a favourite object of Admiralty ju-
rifdiction, mariners may fue for them at common law.

It appears to have been the intention of the legiflature, that juftice
fhould be done in the eafieft and beft manner, and that by the words
" not cognizable at common law," fhould be underftood, " not
properly cognizable at common law."

The next *fecondary* queftion is fo connected with the definition of
*a caufe of Prize,* and the treating of *that* fubject introduces fo many
CONSIDERATIONS CONCERING RELATIVE CIRCUMSTANCES IN
THESE STATES, AND THE LAW OF NATIONS, and thefe again are
fo COMBINED WITH ENQUIRIES AS TO THE JURISDICTION OF
THIS COURT, that they cannot be conveniently, at leaft, not ea-
fily feparated. We will at prefent therefore pafs to the fecond
*principal* queftion, referving till that fhall be difcuffed, what pecu-
liarly relates to the queftion we now leave.

This State has all the powers of Independent Sovereignty by the
Declaration of *Independence* on the 4th of *July,* 1776, except what
were refigned by the fubfequent *Confederation* dated the 9th of *July,*
1778, but not completed by final ratification until the *firft* of *March,*
1781.

N 2                                                                 By

* Fictio, eft in recerta, ejus qued eft poffibile, adverfus veritatem, pro veritate
a jure facta affumptio. Doctor *Godolphin's* view of Admiralty Jurifdiction, p. 84.
† *Zouch,* p. 131. *God* p. 105. 3, *Blackftone,* 107.
‡ 3, *Lev* 355.

By the Confederation, *The United States* are vested, among other things, with the " sole and exclusive power of establishing rules for deciding in all cases what captures on land and water shall be legal, and in what manner Prizes taken by Land or Naval Forces in the service of *The United States* shall be divided or appropriated ; of granting Letters of Marque and Reprizal in times of peace ; appointing Courts for the trial of Piracies and Felonies committed on the High Seas, and establishing Courts for receiving and determining finally appeals in all cases of Captures."

Such a Court was established by the stile of " The Court of Appeals in cases of Capture." Acts of Congress, *May* 24, 1780. By the commission, the Judges are " to hear, try and determine all appeals from the Courts of Admiralty in the States respectively, in cases of capture, which now are, or hereafter may be duly entered and made in any of the said States." Acts of Congress, *February* 2d, 1780.

It was resolved by Congress, *May* 24th, 1780, " that all matters respecting appeals in cases of capture, now depending before Congress or the Commissioners of Appeals, consisting of members of Congress, be referred to the newly erected Court of Appeals to be there adjudged and determined according to Law."

It is necessary to enquire, what is the reasonable and legal meaning of the *words of the Confederation*, and of Congress in their several acts relative to this subject, for that is the true meaning.

Thus we shall be led into a construction, by which the positive words may be properly and justly modified.

What are the foundations of such a construction here ? *First*—The Council for the Respondent, are themselves compelled to qualify the generality of the expression, " establishing Courts for receiving and determining finally, appeals in all cases of captures," by adding, *as prize*. The addition is indispensably necessary ; for without it, the words would comprehend every kind of taking, on land and water, in peace and war. Having been obliged to go so far, in qualifying the extent of the original expression, we are under the same necessity of explaining *the terms of qualification themselves* ; and certainly we have the same right, founded on reason and law, to *explain* them, that we had to *introduce* them. In doing this we shall find, *Secondly*—That " captures, *as prize*, by citizens of *The United States*, may be carried into *foreign countries*, and be *legally* proceeded against in the Courts of Admiralty *there* ; and therefore it is to be inferred that *the Confederation intended* only such captures," brought *infra præsidia* of *The United States*. That this was the intention thereof, further appears, as *Thirdly*—Congress, in the commission and resolution before mentioned, have shewn their sense of the words " Cases of Captures," by using them in reference to appeals " in cases of capture, which then were duly entered and depending," as well as to future cases ; but none were " then entered and depending," except where the " Captures" were brought *infra præsidia* of *The United States*. This sense of Congress, will

app a

1784.

appear ftill more plain from their feveral following refolutions, prior to the Confederation ; which were in force at the time of the capture made by Captain *Talbot,* and which were the ground-work of the *ninth* fection of the Confederation, " *November* 25, 1775— That it be recommended to the feveral Legiflatures, as foon as poffible to erect Courts of Juftice, or give Jurifdiction to the Courts now in being, to determine concerning captures to be made.—If the capture be made on open fea, the profecution fhall be in the Court of fuch colony as the captor may find moft convenient ; provided, that nothing in this refolution, fhall be conftrued fo as to enable the captor to remove his prize from any colony competent to determine concerning the feizure, after he fhall have carried the veffel fo feized, within any harbour of the fame. That in all cafes an appeal fhall be allowed to Congrefs, or perfons appointed by them.—That when veffels are fitted out by private perfons, the captures made, fhall be to the ufe of the owners. *December* 5. That in cafes of re-captures, the re-captors fhall retain for falvage, according to the time, &c. *March* 23, 1776. That all veffels and goods belonging to inhabitants of *Great Britain,* taken on the high feas, by armed veffels of private perfons, and commiffioned, being libelled and profecuted in any Court erected for trial of maritime affairs in any of the colonies, fhall be deemed and adjudged to be lawful prize.—Veffels and goods taken near the fhores of a colony, by the people, or a detachment of the army, fhall be deemed lawful prize, and condemned in the Court of Admiralty of that colony.—Commiffions to be obtained, and bonds to be given for obfervance of inftructions from Congrefs. Inftructions to the Commanders of private veffels of war : You fhall bring fuch veffels, &c. as you fhall take, to fome convenient port of the United Colonies, that proceedings may thereupon be had in due form, before the Courts which are or fhall be there appointed to hear and determine caufes civil and maritime.—You fhall bring one or two of the principal perfons of the veffel, as foon as may be, to the Judge of fuch Court to be examined, and deliver to the faid Judge all papers, &c.—You fhall keep and preferve every veffel, &c. by you taken, until they fhall, by fentence of a Court properly authorized, be adjudged lawful prizes, not breaking bulk, nor fuffering fuch a thing to be done." *Fourthly*—By the maritime law of nations, the *appropriation* of jurifdiction to *a particular* Court of Admiralty, depends upon the capture being *infra præfidia,* 3 *Blackftone,* 108. *that law* regarding proceedings *in rem,* the acquittal or condemnation of the fhip or goods. Anfwer of the *Britifh* Court, to the memorial delivered by order of the King of *Pruffia, Expofition des motifs.* 11. 12. Mod. 143. It would be injurious to nations if it was otherwife ; for it would caufe competition of jurifdictions, and would occafion frauds. The ufual method is fimple and fair. *Fifthly*—The articles in the treaties of *The United States* with *France,* the *United Netherlands* and *Sweden,* with relation to prizes, refer to the cafes of prizes *conducted into the ports* of the contracting powers, relying

1784.  relying on cautions against malverfations and contraventions to be given by commanders of private veffels of war, rules and regulations for deciding the legality of prizes, and trials in Courts of Admiralty generally. *Sixthly*—An authority to " eftablifh rules for deciding in all cafes, what captures on land or water fhall be legal, and Courts for receiving and determining finally, appeals in all cafes of captures," as prize, brought *infra præfidia* of *The United States*, together with the other powers vefted in Congrefs, will fufficiently obviate the mifchiefs apprehended from the irregularities of citizens of *Confederated America* upon the high feas.

*Foreigners* are protected by the confederation, from the irregularities mentioned; for, Congrefs can, " exclufively, appoint Courts for the trial of piracies and felonies committed on the high feas," and can fend out a naval force to cruize for and feize the offenders. If the Refpondent was a *Frenchman*, and the decree goes againft him, he could not juftly complain ; for he inftituted his fuit in an *American* Court. If the appellants were *Frenchmen*, and the decree goes againft them, they could not juftly complain, for they took, without battle, by force and violence, from a friend and ally, that which in their fight, according to their own allegations and proofs, he had before fought for and captured, and afterwards voluntarily put themfelves within the jurifdiction, precinct and power of an *American* Court. What are the fentiments of learned authors, treating of the law of nations, upon fuch an occafion ? " Quæ ab hoftibus capiuntur, *ftatim* capientium fiunt; which is to be underftood, *when the battle is over*. *Voel*, and many writers he refers to, maintain with great ftrength, per folam *occupationem* dominium prædæ hoftibus acquiri. One argument ufed to prove it, is, that *the inftant* the captor has got *poffeffion*, no friend, fellow-foldier, or ally, can take it from him, becaufe it would be *a violation of his property*." Lord *Mansfield*, delivering the refolutions of the Court, in the cafe of *Gofs and another*, againft *Withers*. In either cafe, and in the ftrongeft light in which the affair can be viewed, it is no more than a matter to be treated of between their Sovereign and *The United States*. 2. *Shower*, 232. Raym. 473. If it be faid that Congrefs fhould have a legal mode of making compenfation, by rectifying improper decifions againft foreigners, thereby to prevent difagreeable confequences, it is a doctrine that cannot be univerfally admitted, for reafons too plain to be infifted on. If it be confined to acts on the high feas, *provifion has been made by the Confederation, in the cafes where it was judged neceffary*. What the Rulers of nations defire and ftipulate for in treaties, as to tranfactions on the high feas, is to fecure their people from being plundered by the citizens or fubjects of thofe with whom they treat. That great point being guarded, and it is guarded here, the danger of confequences from cafes that rarely occur, complicated with a variety of circumftances, and decided upon in open Courts, are not to be apprehended. When Sovereigns are determined to quarrel, they will never want pretences; but while they revere the

facred

facred obligations of juſtice and humanity, or the precious ſentiments of the good and wiſe in their own and ſucceeding ages, they will not diſturb the repoſe of the world, by violating the law of nations, upon ſlight claims of their ſubjects, or " *in re minime dubia.*" Anſwer of the *Britiſh* Court. 23. *Vattel*, bo. 11, ch. 4, 5, 7. Neither can *one of theſe States* prey upon another, without violating the Confederation, for by that, "No veſſel of war ſhall be kept up in time of peace by any State, except ſuch number only, as ſhall be deemed neceſſary by *The United States* in Congreſs aſſembled, for the defence of ſuch State, or its trade ; nor ſhall any State engage in any war without their conſent, unleſs invaded by enemies, or certainly adviſed of an intended invaſion by *Indians* : Nor grant commiſſions to any ſhips or veſſels of war, nor letters of marque, or repriſal, except it be after a declaration of war by *The United States* in Congreſs aſſembled, and then only againſt the kingdom or ſtate, and the ſubjects thereof, againſt which war has been ſo declared, unleſs infeſted by pirates, and then only until *The United States* in Congreſs aſſembled, ſhall determine otherwiſe." Beſides, " All diſputes and differences concerning *any cauſe whatever*, are determinable by Courts to be eſtabliſhed under the authority of Congreſs."

Let us now enquire whether the preſent caſe is *ſuch a cauſe of prize* as is mentioned in the many caſes quoted by the Council for the Reſpondent.

In what circumſtances is any of thoſe caſes like this ? Does it appear from any of them, that the *Prize Court* in *England,* would decide *ſuch a caſe as this is ?* Does it appear that the Courts of *Weſtminſter-Hall,* in any action for *ſuch a treſpaſs as this,* would refuſe to take cognizance, becauſe the original taking was a capture *as prize ?* Does it appear that they would refuſe to take cognizance, under colour that the ſecond taking was a capture *as prize ?* If they ſhould, ought any ſuch deciſion to have weight with us in this caſe? What are the caſes quoted? A juſtification by perſons of ORIGINAL *captures made by themſelves,* becauſe made *as prize.* What is this caſe ? A juſtification by perſons of *their conduct, after a capture made in battle, by others in their fight,* under pretenſion of right, founded on *that circumſtance.* If they ſay, the ſecond taking was an original capture *as prize,* their aſſertion is *falſified* by *their own proofs,* that *they ſaw the capture made by others,* the day before. If they ſay, their proceedings were *united* with the original capture *as prize,* by being *in fight* at the time, let them take care that their *pretenſion* of right is well founded. *Comb* 367. If it is not, their proceedings are *diſtinct* from the original capture, and they are plainly Treſpaſſers, and muſt abide by the conſequences. We are clearly of opinion, that their *pretenſion* of right is utterly unfounded, and that the whole conduct of the Commanders and Crews of the Brigs, was cruel, unprovoked, wanton, and *mala fide.* In this very ſingular and extraordinary caſe, they have exerted themſelves to diſable the Reſpondent from proving the capture to be prize ;

and

1784.

and is the sole queſtion afterwards, to be, *prize or not ?* What ne-ceſſity is there for determining whether the *Betſey* was prize or not ? Is it not evident from the caſe of *Combs*, againſt *the Hundred of Bradley*, in *Salkeld's* Reports, and of *Goſs and another*, againſt *Withers*, in *Burrow*, and many other caſes, that an action will lye on *poſſeſſion* by the plaintiff? and with what peculiar force does the reaſon apply in this caſe, for the action being maintained merely on the poſſeſſion? This Court, and the Court of Admiralty are competent, not only to direct proceedings, but to aſcertain facts, judge of them, and the law upon them, and aſſeſs damages, as juſtice may require. As to the notion of *miſtake* excuſing, it is a *petitio principii.* The *miſtake* does not appear—the *crime* does. So far from *behaving as partners* in the capture, *with the Argo,* the Com-manders of the three Brigs, who ſaw the ſurrender to her, chaſe her off; ſend the *Betſy as prize to themſelves only,* for a port *diſtant from the home of the captors, and in the eye of the wind*, though in a part of the ſea where ſhe was *particularly expoſed* to dangers from the enemy, with orders to avoid certain ports, *for fear of the Argo's falling in with her.* In fact, it was not a *real* but a *pretended* cap-ture, *as prize,* by them. Are we then bound, *in ſuch a caſe,* to call it *a cauſe of prize* becauſe the original taking *was* a capture, *as prize ?* Or are we to refuſe to call it *a treſpaſs* though the ſecond taking *was not* a capture, as prize?

How far ſoever, the learned Judges in *England,* have carried the juſtification of captures, from the circumſtance of their being made as prize, yet they never have carried it as far as this caſe extends. That they have gone a great way is evident. In the cited caſe of *Vanderwoodſt and others* againſt *Thompſon,* the defendant, in an action of treſpaſs, having a letter of *Marque,* took a veſſel that made ſome reſiſtance, and carried her to *Newcaſtle,* where ſhe was ſeized by the Cuſtom-Houſe Officers, *for having ſmuggled goods on board;* and ſhe was afterwards condemned in the *Exchequer.* It was con-tended for the plaintiff, that the capture was *unlawful,* becauſe the defendant *did not belong to the Cuſtom-Houſe,* and he could not juſtify the ſeizure under the *hovering* act of 6 *Geo. I. ch.* 11. as *King's ſhips only* can ſeize *under ſuch circumſtances.* It was held, " As there was reaſon to *ſuppoſe* that the ſhip was a pirate, though *the Jury ſhould be ſatiſfied ſhe was not really ſo,* yet the action would not lye." Afterwards, " there was a motion for a new trial, which upon con-ſideration, was denied by the Court."

If that cauſe *was* cognizable in the *Prize Court,* and if that Court determines ſolely by the law of nations and treaties, as is laid down by the Judges, how were other nations intereſted in the prin-ciple of ſuch a deciſion? If it *was not* cognizable in the *Prize* Court, how can it be applied to the preſent caſe, in favor of the Reſpondent?

To proceed—If the Courts of *Weſtminiſter Hall,* in an action for ſuch a treſpaſs as this, *ſhould* refuſe to take cognizance becauſe the original taking was a capture *as prize,* or under colour that the

fecond taking was a capture *as prize,* ought any fuch decifion to have weight *with us in this cafe?*—It ought not.

Such a decifion muft turn entirely upon the municipal law of *England.* It muft be founded upon this principle governing in the cafes cited by the council for the refpondent; " that, of a feizure *as prize,* the *Common Law* does not take notice as a trefpafs." *Le Caux* and *Eden.* Admit the principle. It applies not. *This* is not a *Common Law* Court. The Act of Affembly eftablifhing this Court, makes it a " a Court of Appeals from definitive fentences or decrees of the Admiralty." We are *therefore* a Court of Admiralty. " If the fentence of the Court of Admiralty is thought to be erroneous, there is, in every maritime country, a Superior Court of *Review,* &c. to which the parties who think themfelves aggrieved, may appeal ; and this Superior Court judges by the fame rule which governs the Court of Admiralty, viz. the law of nations and treaties. This manner of trial and adjudication is fupported, alluded to, and enforced by many treaties." Anfwer of the *Britifh* Court, &c. We are a Court of Admiralty, competent to judge by *that rule.* The act of Affembly eftablifhing Admiralty Jurifdiction in this ftate, declares, that the Court fhall be governed by " the law of nations." Whatever in the law of nations relates to a Court of Admiralty, relates to this Court, *becaufe no treaty has diverted the application.* Anfwer of the *Britifh* Court, &c. *Vattel.* b. 2, ch. 7. 3 *Blackft.* 69.

Much has been faid of a diftinction in *England,* between the *Inftance Court* and the *Prize Court,* though the powers of both are exercifed by the fame perfon ; and it is urged that *only the latter* judges by the law of nations and treaties. We are told, " it is no more like *a Court of Admiralty,* than it is to any Court of *Weftminfter-Hall;* that the manner of proceeding is totally different; that the appeal is different—to Delegates from the Admiralty—to Commiffioners confifting of Privy Councellors, from the Court of Prize.—That to conftitute the authority of the Prize Court, or to call it forth in every war, a commiffion under the Great Seal iffues, &c."* Such a diftinction may prevail in *England,* but is it known or regarded in other nations? The words " *to call it forth,*" are material. It feems only a folemn, official, notification to the Admiralty, that there is a war, and that it may proceed accordingly, as a declaration of war is a notification to the people in general. But this declaration does not make the war in the one cafe; nor, perhaps, does the commiffion conftitute the authority in the other. It is confeffed, " that *the moft antient inftrument* fhews a *Prize Jurifdiction* either *inherent* or by commiffion *in the Admiral.* It is a letter from *Edward* the *Third* to the King of *Portugal.*" And, " that fince the reign of Queen *Elizabeth,* the *Judge of the Admiralty,* either by virtue of an *inherent* power, or the King's commiffion,

O

or

* Lord *Mansfield* delivering the refolution of the Court, in the cafe of *Lindo* againft *Rodney* and another.

or both, has *folely* exercifed *the jurifdiction of Prize*—and that as far back as particular cafes can be traced, which is for a century, the *Admiralty* has judged of and condemned goods taken on land, *as prize*, as well as goods taken on fea." Lord *Mansfield*, delivering the refolution of the Court, in the cafe of *Lindo* againſt *Rodney and another.* *

What do treaties, antient and modern, ſtipulate for, in order to guard againſt violences on the feas? A trial in *the Court of Admiralty*, as foon as poſſible, before the effects taken are in any manner to be difpofed of. Why? becaufe, by the maritime law of nations, that court judges by the law of nations and treaties. Sir *George Lee*, Doctor *Paul*, Sir *Dudley Ryder*, and Mr. *Murray*, now Lord *Mansfield*, in their report, which forms the principal part of the anfwer of the *Britiſh* Court, and is fo celebrated by Meſſrs *Montefquieu* and *Vattel*, † fay, " By the maritime law of nations, univerfally and immemorially received, there is *an eſtabliſhed method of determination*, whether the capture BE, OR BE NOT, LAWFUL PRIZE. Before the ſhip or goods can be DISPOSED OF by the captor, there muſt be a regular judicial proceeding, wherein both parties may be heard, and condemnation thereupon, as prize, in *a Court of Admiralty*, judging by the law of nations and treaties. The proper and regular Court for thefe condemnations, is the Court of that ſtate to whom the captor belongs."

Are we then, becaufe in *England* they call the Admiralty Court a Prize Court when it acts in a caufe of prize, and it then proceeds in a different manner, with an appeal to Commiſſioners of the Privy Council, to reject the " univerfal and immemorial" compact of mankind? There was a time————when we liſtened to the language of her Senates and her Courts, with a partiality of veneration, as to oracles. It is paſt—we have aſſumed our ſtation among the powers of the earth, and muſt attend to the voice of nations— the fentiments of the fociety into which we have entered.

Lord *Mansfield*, in the caufe of *Lindo* againſt *Rodney and another*, faid, " The end of a Prize Court is to fufpend the property till condemnation ; to puniſh every fort of mifbehaviour in the captors ; to reſtore inſtantly, *velis levatis*, if upon the moſt fummary examination, there does not appear a fufficient ground ; to condemn finally (if the goods really are prize) againſt every body, giving every body a fair opportunity of being heard :—A captor may, and muſt force every perfon intereſted, to defend ; and every perfon intereſted, may force him to proceed to condemn without delay. *Thefe views* cannot be anfwered in any Court of *Weſtminſter-Hall*, and *therefore the*

---

* The very great antiquity of the Court of Admiralty in *England*, and the extent of its jurifdiction, may be known from the learned *Selden's* notes on *Fortefcue* de Laudibus p. 67. *Zouch* 44, &c. *Godolph.* p. 22, &c. Tho' the authority of this Court, with refpect to matters in which *foreign nations* may be concerned, and particularly to captures *jure belli*, is treated of, yet no diſtinction is made by thefe authors, as to the *Court of Admiralty* and the *Court of Prize*.

† *Montefquieu's* Letters, 5 *March*, 1753. *Vattel*, bo. 2, ch. 7 § 84. 3. *Blackſt* 70.

1784.

the Courts of *Westminster-Hall* never have attempted to take cognizance of the question—Prize or no Prize; not from the locality of being done at sea, but from their incompetence to embrace the whole of the subject."

" *These views* are anfwered" here in the Court of Admiralty, and with as good cautions as in *England;* and as far as a Court of Appeals is concerned, they can be anfwered in this Court as fully as in a Court of Appeals to Commiffioners there.

It feems proper here, to take notice of the objection againft the authority of this Court, founded on the words of the law by which it was eftablifhed, prior to the completion and final ratification of the confederation. It is conftituted " a Court of Appeals for reviewing, re-confidering, and correcting, the definitive fentences and decrees of the Court of Admiralty, *other than in cafes of capture upon the water in time of war, from the enemies of the United States* &c."

The conftruction of thefe words depends upon the refolutions of Congrefs, the Confederation, and the law by which the Admiralty Jurifdiction is eftablifhed, taken together. If the principles of our preceeding conftruction are right, they apply as aptly here, and the appeal is regular. If it is not, there will be a defect of juftice. The Legiflature intended to give this Court an authority to receive all Appeals from the Judge of Admiralty, where they were not refigned to a Continental Court of Appeals. This was not refigned. It therefore belongs to this Court. We will endeavour to promote juftice, according to the intentions of the Commonwealth, conveyed in the laws; and not demit any part of her fovereignty, unlefs we are convinced beyond a doubt, that it is our duty to do fo.

We now return to *the laft* of the *fecondary* queftions. Did the Court of Admiralty take cognizance *as a Prize Court?* In confidering this queftion, a very ftrict attention muft be had to *the proceedings* of the Court of Admiralty in this cafe.—That Court was alfo erected by an act of Affembly, prior to the completion and final ratification of the Confederation. It is, to be fure, a Court of Prize, and an Inftance Court, if that mode of expreffion be preferred; or in other words, the Judge who has but one commiffion, may try caufes of Prize, and other matters of Admiralty Jurifdiction. There is a difference in his proceedings for condemnation in caufes of prize, and thofe in other cafes. His ftile by law is, "Judge of the Admiralty." The reasonable and legal meaning of the 3d, 4th and 6th fections of the law under which he acts, is, that in trying a caufe of prize, the veffel or goods taken, muft be within his jurifdiction, precinct and power. They are thefe,—" That in cafes of prize, capture or re-capture upon the water, from enemies, or by way of reprifal, or from pirates, the fame fhall be tried, adjudged, and determined, *as well as* to the queftion whether *prize or not,* as to *the claims of the parties interefted or pretending to be interefted in the fame,* by the law of nations and the acts and ordinances of Con-

Con-

1784.

grefs, before the faid Judge, by witneffes, according to the courfe of the civil law ;" and—" That the Captain or Commander of any fhip or veffel of war, or Prize-Mafter, or other perfon, *having charge* of any capture or re-capture, or other property feized upon the water as aforefaid, who fhall *conduct or bring the fame into port*, fhall immediately deliver the fame, without diminution, to the Marfhall of the faid Court of Admiralty."

The law then goes on to direct the mode of proceeding to the condemnation, ordering, " That the Judge fhall caufe notice to be publifhed immediately in fome news-paper of the day appointed for the trial of *fuch prize*, inferting therein the name, fize or burthen, and other defcription of the faid veffel, *fo taken and brought into port*, the name and fur-name of the mafter, the place fhe laft failed from, the port for which deftined, and in cafe of a re-capture, by what fhip or veffel taken, to the end that all perfons concerned may appear and fhew caufe, if any there be, wherefore *fuch capture*, or *recapture*, goods, merchandize, or other property, fhould not be condemned and adjudged to the Libellants."

Does the prefent cafe in any manner refemble the " *cafes of prize*" *defcribed in this law ?* Where are " *Claimants interefted or pretending to be interefted ?*" Claimants are *voluntary* Applicants for Juftice. Shall trefpaffers, *compelled* to anfwer for their wrong, cover themfelves with that character ? Can there be *" Claimants,"* but in a proceeding *in rem ?* How would the publication before mentioned fuit *fuch Claimants* as the appellants ? Were the proceedings of the Judge in this cafe, *fuch as he conftantly has obferved* in cafes of prize ? They were not. Application was made to him for *damages*. He proceeded in that line. Here is neither libel nor procefs againft the capture.—no monition,—" no notice" under the act of Affembly.

What could give the Judge of the Admiralty for *this ftate*, jurifdiction to proceed as a Court of Prize upon a capture contefted *between citizens of different ftates*, which is the cafe here, rather than any Court of Admiralty in any other ftate, when the property captured was not within the power of his Jurifdiction ? Becaufe, it is faid, fome of the offending Captains and their veffels came into this port. Does the jurifdiction of a Court of Prize depend on certain offenders, with refpect to the capture coming into a port ? Where are the authorities of law to fhew that *this circumftance* can give fuch jurifdiction, or, that there can be an inftitution of *a caufe of prize, according to the maritime law of nations, for damages only ?* The authorities cited, that were thought moft appofite, and were moft relied on by the Counfel for the Refpondent, were thofe of *Brown* and *Burton* againft *Franklin*, the King's Proctor ; and of the *King* againft *Broom*. But they are not in any manner applicable. In the firft, the Plaintiffs, Mafters of two veffels, but having no regular Letters of *Marque*, took a *French* fhip, cargo and money, upon land, in the *Eaft Indies*—, they being *Englifh* fubjects, it was held, that they acquired no right by this capture, but that it was *a perquifite*

*fite of the Admiralty.* The King's Proctor, upon the usual moniti- 1784.
on, got a sentence of condemnation for the whole, in order to make
them account. In brief, *they had effects in their hands*, which by the
maritime law of *England*, belonged to the King or his Admiralty,
and they were obliged to account for them *according to that law.*
12 Mod. 135. Lord *Mansfield* calls it a proceeding *in rem. Le
Caux* and *Eden*, in the notes. The second case was of the same
kind, and was decided on the same principles. It was further said
by the Council for the Respondent, that the Court of Admiralty that
*first* proceeds in such a case as the present, acquires an exclusive
right of deciding upon it, in the same manner as the nation that first
commences a judicial process against pirates, may pronounce sen-
tence against them. To say no more on this comparison, it is suf-
cient to observe, that such a right may be attributed to the attroci-
ty of the guilt, as the offenders are *hostes humani generis.*

If the coming of Trespassers, or of the vessels in which they
trespassed upon the high Seas, within the power of a Judge's ju-
risdiction, authorises him to proceed against them, to what confu-
sion may it lead? A capture is made from an enemy; afterwards
friends trespass against the prize, and arrive in different ports, the
fate of the prize being unknown. They are prosecuted in one or
more Courts of Admiralty. The prize at length arrives in a dif-
ferent port, and is libelled in a different Court of Admiralty, for
condemnation in the usual manner. What contests for jurisdiction
must ensue? " *Quod inconveniens est non licitum est.*"

We are unanimously of opinion, that the Judge of the Admiralty
for this state, had jurisdiction in this cause, and that the appeal to
us is regular. We decree, that the Respondent recover and have
of the Appellants, 1,141l. 5s.4d. with costs, except those in this
Court, of which each party is to pay a moiety,*

* See *Post. Purviance* vs *Angus,* 180