4 U.S. 155
 4 Dall. 155
 1 L.Ed. 780
 Keppele et al.
v.
Carr et al.
Carr et al.
v.
Keppele et al.
 Supreme Court of Pennsylvania.
 December Term, 1798
 
 1
 THE case was, briefly, this: Kepple and Zantzinger, Philadelphia merchants, being indebted to Carr and Sons, English merchants, for goods sold and delivered, bought a bill of exchange from John Swanwick for the amount, drawn in their favour and indorsed by them; delivered the bill to one of the partners of Carr and Sons, who was in Philadelphia, but who expressly refused to remit it, on the account and risque of his house; and informed Carr and Sons by letters, dated, respectively, the 20th of May, and 20th of June 1796, 'that the bill, when paid, will be in full for merchandize (high charged) to our G. Keppele, by your invoice dated the 31st of March 1795.' The bill was duly presented and protested for non-acceptance, on the 27th of June, and for non-payment, on the 29th of August 1796; and, on its being returned with the protest, notice was reqularly given to the drawer and indorsers. Keppele and Zantzinger then (about the 5th of November 1796) tendered to Carr the principal and interest of the bill, and demanded restitution of it, with the protest; but Carr refused to accept the tender, or to deliver up the bill; saying 'that he would settle the bill himself with Swanwick:' whereupon Zantzinger declared, 'We shall consider the bill at your risque, from this day.' Carr then entered into an arrangement with Swanwick, took his promissory note for principal, damages, and charges, and delivered to him the bill and protest. Before the note became due, Swanwick had failed; and Carr demanded payment from Keppele and Zantzinger, on the footing of the original account for goods sold. On the other hand, Keppele and Zantzinger demanded from Carr, the twenty per cent. damages, included in Swanwick's note, with interest from the date of the note. And, upon these adverse claims, the present actions were instituted, and tried at the same time.
 
 
 2
 At the trial of the cause, three grounds were taken in favour of Carr and Sons: 1st. That the language of the letters, written by Keppele and Zantzinger, was not meant to retain an interest in the bill of exchange; but to preserve, unimpaired, the original contract, if the bill was not honoured; or, at most, to protect them, as indorsers, from being liable for damages; but not to entitle them to receive any. Carr and Sons had a complete power over the bill; they might have cancelled it after acceptance, for the acceptor's note; or they might have released it upon any, or no consideration to the drawer's agent in England; the only effect of which would be, to ender the bill payment of the preceding debt, as in Watts v. Willing, 2 Dall. Rep. 100. And Chapman v. Steinmetz, 1 Dall. Rep. 261. differs from this case; because the suit was there against the drawer of the bill, who was, also, the original debtor, expressly stipulating, that he should not be liable for damages; and here Carr and Sons do not sue Keppele and Zantzinger on the bill, for damages. 2d. That whatever might be the operation of the original contract, the claim of Keppele and Zantzinger to damages was extinguished, when Zantzinger declared, that 'the bill would be considered for the future, at the risque of Carr and Sons;' changing essentially the relative responsibility of the parties. 3d. That the suit brought by Keppele and Zantzinger, for the damages, was a disaffirmance of any implied contract, that the bill of exchange was paid, or received, in satisfaction of the precedent debt; and, consequently, Carr and Sons are entitled to recover upon the old account, whatever may be their responsibility for the principal, as well as the damages, of the bill. In that respect, too, Keppele and Zantzinger have chosen to regard them as agents; and can only be entitled to recover, what Carr and Sons received, to wit, Swanwick's promissory note.
 
 
 3
 In favour of Keppele and Zantzinger, it was urged, 1st. That the remittance of the bill of exchange was, by express stipulation, upon their account, and at their risque; and the terms of the remittance came, pointedly, within the principle of Watts v. Willing, and Chapman v. Steinmetz. Till the bill was paid in England; or, in case of a protest, till it was recovered from the drawer here, it was, exclusively, at the risque of Keppele and Zantzinger; and they, who were exposed to the whole risque were entitled, in law and equity, to the whole benefit of an indemnity. 2d. That the declaration of Zantzinger, does not, either in the intention, or the expression, amount to a waiver of the claim for damages; nor can it, in any respect, impair, or alter, the conditional contract on which the remittance was made. 3d. That the conduct of Carr and Sons has made the bill of exchange an absolute fund for the payment of the precedent debt; and that debt was eventually extinguished and satisfied, by taking Swanwick's note: but their conduct creates no right to receive, more than the amount of the precedent debt; and, consequently, they are liable for the damages in one suit, though they cannot recover upon the account, in the other suit.
 
 
 4
 [1]SHIPPEN, Justice.
 
 
 5
 The sum in controversy is small; but the principle of the decision, is of great and general importance. What is the law, the justice, and the usage, upon the subject? It appears from two cases, that have been cited (1 Dall. Rep. 261. 2 Dall. Rep. 100.) to be the settled law, that where a bill of exchange is not paid and received, in satisfaction of a debt, due from a merchant to his correspondent, it goes at the risque of the debtor; and the creditor who remits it for acceptance and payment, stands on the footing of an agent only, until the bill is actually paid. Then, in point of justice, it seems but fair, to allow every incidental, or casual, profit and emolument, to the party who is exposed to all the hazard and inconvenience of the remittance. As to the usage, the jury are best able to ascertain it from personal experience; but so far as I have been able to collect information, there appears to be only one opinion among commercial men; to wit, that he is entitled to the damages, on whose account and risque the bill of exchange is remitted. To disturb this usage, would, obviously, operate very injuriously to the American merchant, in favour of foreign merchants; but, if the usage were not established, or if it were an unreasonable one, our decision would not depend upon considerations of that nature: we should say, fiat justitia, ruat coelum!
 
 
 6
 Let us, then, consider the facts of the present case, under this general view of the law, justice, and usage, of merchants. The debt was due and payable in London. The creditor refused to accept payment here, on account of the rate of exchange. The immediate loss and expense of the remittance fell, therefore, on the debtor, as well as the contingent risque of the bill. The creditor, also, refused to take the hazard of the remittance to himself; and, in effect, agreed to act as the agent of the debtor, in all that related to the bill of exchange. There is not, in short, the least doubt on this important fact, that the bill was remitted on account of Keppele and Zantzinger, though indorsed by them to Carr and Sons. When the bill returned protested, the debtor demanded it, tendering the amount of principal and interest; but this overture to a payment was peremptorily rejected by Carr; and he assumed the sole management of settling the business with Swanwick. Whether it was settled by a cash payment, or by a promissory note, is not material; the bill being delivered up without the authority, or consent, of Keppele and Zantzinger; and Carr and Sons becoming, consequently, responsible to them, for the full value of their interest in the bill. That interest was the amount of the damages, on the principles, which have already been suggested; particularly, because Keppele and Zantzinger defrayed the whole expense, and run the whole risque, of the remittance. Suppose, produce had been shipped to Carr and Sons, to be sold on account of the shippers, but the proceeds were to be applied to the payment of their debt, could it be pretended, that the consignees would be entitled to any profit on the sale; or that, in case of a loss, it must be borne by them? No: in that instance, and I think, with a parity of reason, in the instance before the Court, Carr and Sons are neither to know profit nor loss, in the transaction. It is surely enough for the British merchant, to enjoy the fair profit charged upon the goods, which he sells and transmits to his American customers; without being allowed to speculate upon the damages on bills of exchange, the usual medium for paying his account, in a way, that enables him to pocket all the gain, and to cast upon that all the loss.
 
 
 7
 In justice to Carr and Sons, however, it is proper to take notice of another ground, on which their cause has been placed; the only ground, indeed, that has created any doubt, or difference, in the minds of the Judges. On the 5th of November 1796, when they refused to accept a tender of principal and interest, Keppele and Zantzinger made a declaration, which, at the first view, looked as if they relinquished every pretension to the bill of exchange: 'We shall consider the bill as at your risque from this day.' This expression, however, cannot, in law, be regarded as constituting a new contract, or agreement; for, certainly there was no mutuality of bargain; no coincidence of proposition and assent: But it may, in point of fact, be regarded as an extinguishment of the conditional terms of the remittance; as an abandonment of all claim upon the bill of exchange; a fact which the jury must decide. It appears to me, however, that if law, justice, and usage, had previously vested the right to damages in Keppele and Zantzinger, it is too light, too equivocal, an expression, to be construed into a waiver of that right; particularly, when it may with, at least, equal propriety be construed to mean, that they should consider Carr and Sons responsible, if Swanwick failed in payment.
 
 
 8
 On the action by Carr and Sons, against Keppele and Zantzinger, it is unnecessary to detain the jury with any explanatory remarks. The account was settled; and, by the conduct of the plaintiffs, it has been completely paid, in law and justice.
 
 
 9
 SMITH, Justice.
 
 
 10
 I concur in the opinion of my venerable brother, as to the second action; and subscribe, indeed, to all the general principles, which he has stated, in reference to the first. But it is my misfortune to view in a different manner from him, the important transaction of the 5th of November 1796: for, whatever may have been the antecedent rights of Keppele and Zantzinger, the conversation of that day, does, in may opinion, essentially change the situation of the parties. The bill was thenceforth entirely at the risque of Carr and Sons; and if Swanwick had failed the very next day, before any arrangement for payment, or before any laches in the endeavour to obtain payment, Carr and Sons could never have recovered from Keppele and Zantzinger, either on the original account, or on the indorsement of the bill. The risque of Keppele and Zantzinger being thus as end, all their legal and equitable claim to the damages, on account of risque, must, also, be extinct.
 
 
 11
 In an early stage of the transaction, too, I think there is some fallacy in treating Carr and Sons merely as the agents of their debtor, in relation to the bill of exchange. If they had lost, or destroyed, it; if, on the protest, the drawer's friend had paid it in London for his honour; or, if Carr and Sons, after an acceptance, had released the acceptor, with, or without, a consideration; surely, in none of these instances could a claim to twenty per cent. damages arise; and all that Keppele and Zantzinger could insist upon in law, justice, or usage, would be, that the bill, under such circumstances, should be deemed a payment of their debt, notwithstanding the conditional terms of the remittance.
 
 
 12
 In these sentiments, I am uninfluenced by any consideration of attachment to the American merchant, or of enmity to the British merchant: and, I think, they will be found to conform best to the honour of all merchants, which, like the chastity of a female, should be free from suspicion, as well as free from taint.
 
 
 13
 M'KEAN, Chief Justice.
 
 
 14
 Upon the refusal of the tender in November 1796, Zantzinger declared, that the bill of exchange should be at the risque of Carr and Sons for the future. The meaning of this declaration, I understand to be (at least, it is a reasonable interpretation) that Carr and Sons themselves should be answerable to Keppele and Zantzinger, for the principal, interest, and damages, even if Swanwick should become insolvent. Under the view of the case, I concur with my brother SHIPPEN, in all his remarks which he has delivered to the jury.
 
 
 15
 Verdict for Keppele and Zantzinger in both actions.
 
 
 16
 Ingersoll and Brinton, for Keppele and Zantzinger.
 
 
 17
 Dallas, for Carr and Sons.
 
 
 
 [1]
 The Judges differing in opinion, each addressed the jury; but the Chief Justice, on account of indisposition, added only a few words, in affirmance of the sentiments of SHIPPEN, Justice.