## Cohen's Appeal.

The orphan's court have no power to vacate letters testamentary or of administration, against the consent of the executor or administrator, unless after neglect or refusal to comply with a previous order of the court made upon him to give security : or in case of his being duly declared a lunatic or habitual drunkard.

APPEAL by Sarah M. Cohen and others, heirs of Beliah Cohen deceased, from the decision of the orphan's court of Lancaster county.

The heirs of Beliah Cohen presented their petition to the orphan's court, setting forth that Joseph Simon, by his last will and testament, appointed Levi Phillips, Leah Phillips and Beliah Cohen the executors thereof, of whom Leah Phillips alone survived ; that they were interested in the estate of the testator, and the said Leah Phillips was mismanaging the same to their prejudice ; and praying the court to award a citation to the said Leah Phillips to appear and show cause why she should not be removed from the office of executrix. Upon the return of the citation a motion was made on behalf of the executrix to quash it, on the ground that the orphan's court had no power to dismiss an executrix, without offering her the alternative of giving security. The orphan's court did quash the citation, and the petitioners appealed.

*Cohen* and *Hopkins*, for appellants, contended, that the evil sought to be remedied in this case was within the general powers of the orphan's court, with which they were vested by the act of March 1813, and cited, Wallace v. Elder, 1 *Serg. & Rawle* 143 ; Guyer v. Kelly, 2 *Binn.* 299 ; Sterrett's Appeal, 2 *Penns. Rep.* 419 ; Yohe v. Barnet, 1 *Binn.* 364 ; Act of 9th March 1832, *Pam. L.* 190 ; 1 *Black. Com.* 87 ; 6 *Bac. Ab.* 384 ; 1 *Showers* 108 ; 3 *Bac. Ab.* 8, *pl.* 6 ; 2 *Williams on Ex.* 29 ; 1 *Jac. Law Dic. tit. Ex. pl.* 2 ; Taggert's case, *Ashmead's Rep.* 321.

*Franklin* and *Reigart*, for the appellee.

The orphan's court has a limited jurisdiction defined by legislative enactment, and having only those powers which are expressly given. Kreider v. Kreider, 11 *Serg. & Rawle* 231 ; *Whart. Dig. tit. Orphan's Court, pl.* 205. In England an executor cannot be deprived of his office because of bankruptcy. *Tol. on Ex.* 488 ; 3 *Bac. Ab.* 7, *tit. Ex.*; 1 *Lord Raym.* 361. The act of 1713 is not applicable to this case, and it is not necessary that it should be ; for we have a statute which provides a plain remedy : to call upon the executor to give security, or show cause why he should not be dismissed. An

executor is selected by the testator, appointed in his will, and under that same will legatees and devisees are volunteers as to their interests. Courts should therefore be jealous of interfering with one part of a will, at the instance of those who are interested in another part. This citation not only calls upon the executrix to show cause why she should not be dismissed, but also, why another should not have letters *de bonis non cum testamento annexo.* This is without the semblance of authority.

The opinion of the Court was delivered by

KENNEDY, J.—Upon the 17th of April 1833, Sarah M. Cohen and seven others, children of Beliah Cohen, presented their petition to the orphan's court of Lancaster county, setting forth that Leah Phillips, surviving executrix of the last will and testament of Joseph Simon, late of the said county, deceased, had *mismanaged* and was *mismanaging* the estate of the testator to the great injury of the petitioners, who claimed a portion of the same as devisees and legatees under the will; and therefore prayed the court to issue a citation directed to her, calling upon her to show cause why she should not be *removed from the office of executrix;* and that the court would make such further orders as might be just and equitable.

On the 20th of the same month a citation was issued by the court directed to Leah Phillips, citing her to appear before the judges of the same court on the 17th of June then next following, to show cause why she should not be removed from the executorship of the estate of the said Joseph Simon deceased; and why letters of administration with the will annexed, should not issue to Joseph S. Cohen, one of the parties interested in the said estate.

On the 27th of June following, a motion was made to quash this citation, because, as was alleged, it had been issued improvidently and contrary to the act of assembly. The court afterwards, on the 21st of September, being of opinion that, according to the act of assembly in such case made and provided, Leah Phillips should have been cited to show cause first why she should not give security, instead of why she should not be removed from the office of executrix, quashed the citation. From this order of the orphan's court the petitioners have appealed to this court.

The only question to be decided is, have the orphan's court the power of discharging an executor from his office when he is wasting and mismanaging the testator's estate, without first requiring him to give security for the faithful performance of his trust? For in this case the citation is grounded upon the petition, which contains no other cause for the removal of the executrix from her office than that she had mismanaged and was mismanaging the estate, and therefore the petitioners pray a citation "directed to her to show cause why she should not be removed from the office of executrix," absolutely and unconditionally; and not to show cause why she should not give security for the performance of the trust, or other-

wise be removed.　But if the orphan's court had no authority to make an absolute order of removal for such cause, it would seem to follow that the citation was irregularly issued, and that the court were right in quashing it; because the fifty-seventh section of the act of assembly, passed the 29th of March 1832, *Pamph. L. of* 1831-1832, *p.* 208, which prescribes the manner of proceeding in the orphan's court to obtain the appearance of a person amenable to its jurisdiction and to compel obedience to its orders and decrees, requires not only that the facts necessary to give the court jurisdiction and the specific cause of complaint shall be set forth in the petition, but that the *relief desired* shall also be stated.　I therefore take it, that to warrant the issuing of the citation, it must not only appear from the facts set forth in the petition that the orphan's court has jurisdiction of the cause of complaint, but that the *relief* desired is such as the court has power to grant in the manner and form prayed for.

It has been argued in the present case, that under the second section of the act of the 27th March 1713, *Purd. Dig.* 667; 1 *Dall.* 98; 1 *Smith* 81, the orphan's court has full power and authority given to it to make such order or decree as was asked for. That although the section in terms only embraces administrators, yet the equity of it extends to executors, and ought therefore to be so expounded, like the statute of 4 *Ed.* 3, *ch.* 7, *de bonis asportatis in vita testatoris;* which, by construction, is made to embrace administrators although not named in it.　Smith *v.* Calleay, *Cro. Eliz.* 384; Harris *v.* Vandeogie, *Moore* 400, *pl.* 526; 11 *Vin. Abr.*, *title Executor,* (*P.*) 126, *pl.* 19.　The first clause of this section applies only to cases where letters of administration are granted without taking bond with sureties, and declares them void and of none effect.　After which, the legislature proceed to enact that " if, upon examination, it appears that any of the said officers (meaning the officers authorized to grant letters of administration) *have not taken sufficient sureties,* where the administrators may *not* be of *sufficient ability* to answer or make good the value of what the decedent's estate doth or shall amount to, then the said justices of the orphan's court are thereby required and empowered to cause all *such* administrators to give better security to the register general by bonds, in manner and form as the law prescribes, and under such penalties, and with such sureties, as the said justices, after they have heard the objections of creditors or persons concerned (if any such be made sitting the court) shall approve of.　And if it appears that any of the *said administrators* have embezzled, wasted or misapplied, or suffered so to be, any part of the decedent's estate, or shall neglect or refuse to give bonds with sureties as aforesaid, then, and in every such case, the said justices shall *forthwith,* by their sentence, revoke or repeal the letters of administration granted them; and thereupon, the said register-general, or other person empowered to grant administration as aforesaid, when such occasion happens, are thereby required to grant letters of

[Cohen's Appeal.]

administration to such person or persons, having right thereunto, as will give bonds in manner and form aforesaid, &c." This latter clause is relied on as being sufficient to sustain the appeal in this case, and to reverse the decision of the orphan's court. But who are meant by the words "said administrators," when it is said, "if it appears that any of the *said administrators* have embezzled, wasted or misapplied, or suffered so to be, any part of the decedent's estate, then, and in every such case, the said justices shall *forthwith*, by their sentence, revoke or repeal the letters of administration granted them?" It is most obvious that the administrators therein previously mentioned, who have not given sufficient sureties, and are not of ability themselves to answer or make good the value of what the decedent's estate doth or shall amount to, are referred to. And I am also rather inclined to believe that, in practice, the construction of this section of the act of 1713 has been confined to administrators obtaining letters without giving bond and sureties; or upon giving bond with sureties insufficient at the time of granting the letters. This may possibly be thought a very narrow construction, and perhaps it is so; but I have never known or heard of an instance in which the letters of administration granted to administrators who had given sufficient sureties at first, were afterwards revoked or repealed *forthwith*, upon its being made to appear that they had embezzled, wasted or misapplied the estate of the decent. Indeed, if this section of the act of 1713 had been understood to have given to the orphan's courts the authority now contended for, the provisions in the first section of the act of the 4th of April 1797; 4 *Dall.* 155; 3 *Smith* 296; *Purd. Dig.* 670, 671; would have been unnecessary, unless for the purpose of modifying the exercise of it; because the orphan's courts are thereby expressly required and authorized, wherever it shall be made to appear that administrators are *wasting* or *mismanaging* the estate of the decedent, to order them to give such further security as the court shall judge necessary, and in case of their neglect or refusal to comply with such order for the space of thirty days, then to vacate their letters of administration. But be this as it may, it is very clear that the act of 1713 does not in terms embrace the case of executors who may be found embezzling, wasting or misapplying the estates of their testators. And in practice, I think it has never been made to reach them. The act, however, of 1797 expressly includes them as well as administrators, and provides the same remedy against both in case of their wasting or mismanaging the estate of the decedents. Hence, to resort to any other remedy or course of proceeding in such cases, unless it be one prescribed by a subsequent act of the legislature, would, as it appears to me, be to make a new law on the subject, instead of to expound and administer what has been already made, which is the utmost that we can do without transcending our authority. It must, I think, be admitted by all, that the only authority which courts have to act on this subject, is derived from the acts of the legislature; and seeing a

specific remedy has been already provided thereby, it would, and ought to avail nothing with the court, to show that such remedy is altogether inadequate to meet the exigency of the case. Such an argument might very properly be addressed to the legislature, with whom alone the power to change and make laws remains, but with the court it is left merely to expound and administer the laws that are in being, and by them they must be bound.

But if any doubt could remain after a careful examination of these acts, as to the correctness of the decision of the orphan's court in this case, the provisions of the act of the 29th of March 1832, *Pamphlet Laws* 190, are more than sufficient to dispel it. By the twenty-second and twenty-third sections of this act, it is made lawful for the orphan's court, having jurisdiction of the accounts of any executor, administrator or guardian, where he " is *wasting* or *mismanaging* the estate or property under his charge, or is *like* to prove *insolvent*, or has *neglected* or *refused* to exhibit *true* and *perfect inventories*, or render *full* and *just accounts* of such estate or property come to his hands or knowledge, to require security of such executor, or such other and further security of such administrator or guardian, as they may think reasonable, conditioned for the performance of their respective trusts:" and if such executor, administrator or guardian, shall *neglect* or *refuse to give such security*, or such *further security so ordered*, then the *court shall vacate* such letters testamentary or of administration, or remove such guardian, and award new letters to be granted, in such form as the case may require by the register having jurisdiction, upon such authority as the court shall think proper. It is also thereby provided, that if it shall be made to appear to the orphan's court, or to any judge thereof, on the oath or affirmation of any person interested, that such executor, administrator or guardian is about to remove from this commonwealth; or that the property under his charge may be wasted or materially injured before he can be reached by the ordinary process of the court, it shall be lawful for such court or judge to issue a writ of attachment against him. But in no case is any authority given to vacate the letters testamentary granted to an executor, or letters of administration to an administrator, against his consent; unless after neglect or refusal to comply with a previous order of the court made upon him to give security; or in case of his being duly declared a lunatic or habitual drunkard. These two latter cases are provided for in the twenty-sixth section of the act, and when taken in connection with the other provisions of the act, show to demonstration that the legislature did not intend to give to the orphan's court the power of removing an executor or administrator from his office, however fraudulent his conduct might be, as long as he retained sufficient capacity to perform the duties thereof, and was willing to give such security for that purpose as the court should require.

Under this view of the matter, I think the orphan's court was right in dismissing the petition of the appellants.

Decree affirmed.