# Harberger's Appeal.

1. The executor named in a will has a right to demand that letters testamentary thereon be granted to him. The mere fact that such executor resides in another county of this commonwealth than that in which the will is admitted to probate does not authorize the register or the Orphans' Court to demand of him a bond conditioned for the faithful performance of his duties as executor.

2. It is only after letters have been committed to an executor that the Orphans' Court obtains jurisdiction under the Act of March 29th 1832, sections 22–24 (P. L. 195), and under the Act of May 1st 1861 (P. L. 680), to discharge him or compel him to give security. Prior to that time said Court has no power to control the issuing of letters to him or to compel him to give security.

May 5th 1881. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Appeal from the Orphans' Court of *Lancaster county :* Of May term, 1881, No. 98.

This was an appeal by Louis B. Harberger, from a decree of the said court directing the register of wills only to issue letters testamentary to said Louis B. Harberger, under the will of his mother, Elizabeth B. S. Harberger, upon his filing an approved bond in the sum of $25,000.

Mrs. Elizabeth B. S. Harberger died May 10th 1879, having

[Harberger's Appeal.]

by her will, dated May 12th 1873, proved July 8th 1880, appointed her sons, Alexander J. Harberger and Louis B. Harberger to be her executors, with power to sell her real estate without liability on the part of purchasers to see to the application of the purchase-money. Objection was made before the register to the issuing of letters testamentary to Louis B. Harberger, but he decided to grant letters jointly to the two executors named in the will. From this decision H. W. Harberger and Alexander J. Harberger took an appeal to the Orphans' Court, on August 20th 1880, and on the same day the court made an interlocutory order, directing the register to withhold the issuing of letters testamentary to Louis B. Harberger until the determination of the appeal; and it appearing that by some misunderstanding letters had been granted to him, the court granted a rule to show cause why the same should not be revoked, or he be ordered to give bond with security for the faithful performance of his duty as executor. On the same day the register issued letters testamentary to the other executor, Alexander J. Harberger, from which action Louis B. Harberger entered an appeal to the Orphans' Court.

The testimony showed that Mrs. Harberger, a widow, resided in Philadelphia at the time of making her will, where Louis B. Harberger also resided. She afterwards removed to Lancaster, where her son Alexander J. resided, Louis remaining a resident of Philadelphia. Much evidence was given with the view of showing that Louis B. Harberger was of weak mind, untrustworthy, insolvent, on bad terms with the members of his family, and generally unfit to act as executor.

After argument the court (LIVINGSTON, P. J.) filed an opinion, saying, *inter alia:* "We have found nothing in the testimony which requires us to reverse the decision of the register, so far as the residence, or capacity of mind, or habits of the applicant is concerned. But, inasmuch as he is a non-resident, the estate apparently large, and the will does not require the purchaser to see to the proper application of the purchase-money, but expressly relieves him from so doing, we think, as he is a man of no estate, he should give security for the performance of his duty as executor, and the proper accounting for and payment over on distribution of all moneys which may come to his hands and possession as executor. . . . .

"L. B. Harberger presents here a *prima facie* right to letters; he has been appointed as such by the testatrix; he was as near to her as the heirs or legatees named in her will, or as the other executor, her son. Her choice should be respected and held valid by the court unless there is satisfactory proof of in-

competency or unfitness on his part, mentally or physically. This has not been presented.

"Since the passage of the Act of May 1st 1861, Purd. Dig. 454, pl. 242, the removal of an executor, or other personal representative of a decedent, is a question resting in the sound discretion of the court, and it was held in Kellberg's Appeal, 5 Nor. 129, that where it is clear that the relations between an executor and the heirs are not harmonious, and it is manifest that the interest of the executor is adverse to those of the heirs, nothing but some controlling necessity will justify his retention as executor.

"It is the duty of these two executors to make an honest effort, laying aside any animosity they may harbor against each other, to execute the trust committed to them—the dying request of their mother; if either, upon letters being granted to them, should refuse so to do, it will then be time enough for the court to interfere and dismiss either of them who may refuse to properly execute the duties devolving upon them as executors."

The court entered the following decree : " We, therefore, order and direct the Register of Wills of Lancaster county, from whose decision this appeal was taken, to issue letters testamentary to Louis B. Harberger upon the estate and under the will of E. B. Stowers Harberger, deceased, upon the presentation of a bond by said L. B. Harberger, approved by this court, in the sum of twenty-five thousand dollars. The appeal of L. B. Harberger is dismissed."

Louis B. Harberger thereupon took this appeal, assigning for error the said decree.

*H. M. North* (with him *H. B. Swarr* and *J. Joseph Murphy*), for the appellant.—The court, in directing that Louis B. Harberger should enter security as a condition precedent of the issuing of letters testamentary to him, exceeded its power. The court professed to act under the Act of May 1st 1861, P. L. 680. But that act by its terms applies only to cases where an executor, *after* the grant of letters testamentary to him, " is wasting or mismanaging the estate *under his charge*, or when, for any reason, the interests of the estate or property are likely to be jeoparded by the *continuance* of any such executor," &c. In such cases the court may either require security or vacate the letters, but there is no authority in this or in any other act to require security in advance. Parsons' Appeal, 1 Norris 465. The court based its action on the statement that Louis was a " non-resident," and a man of no estate. But he was not a non-resident of the state, he lived in Philadelphia ; and a residence in another county was no bar to his qualifying as executor. The

testatrix exercised her legal right to appoint him an executor, and whether he has any estate other than that devised to him, or not, is immaterial. Equally immaterial is the question whether the estate of the testatrix is large or small.

*J. L. Steinmetz*, for the appellee.—The object of the Acts of 1832 and 1861 was to invest the court with power to protect the estate of a decedent wherever "for any reason the interests of the estate *are likely* to be jeopardized," &c. Now, suppose a case where the executor named in the will is notoriously a rascal, must the court award him letters testamentary to enable him to obtain possession of the estate, and then wait until it is "being mismanaged," and, perhaps, wholly carried off, before it can require security or vacate the letters? This case is hardly less strong. The testatrix made her will in 1873, and circumstances changed before she died in 1879. The testimony showed that Louis failed; had judgments entered against him, which have never been paid; that he embezzled money in a position of trust; that his mother lost all confidence in him, and said she intended to die intestate; that in 1874 he wrote to her: "I will return you the will left with me, as it is not worth the paper it is written on; you know the divine contempt I have for all my kindred." The facts would have justified his dismissal as executor, and the court acted leniently in merely demanding security. In Piper's Appeal, 8 Harris 67, a trustee was dismissed before he had entered on his duties. The proceedings in that case were under the Act of June 14th 1836, which is similar to the Act of 1861. The facts in this case are stronger than in Kellberg's Appeal, 5 Norris 129; McKennan *v.* McCahan, 2 Phila. 215; McKennan's Appeal, 3 Cas. 237; Chew's Estate, 2 Pars. 153; Cornpropst's Appeal, 9 Casey 537.

Mr. Justice GORDON delivered the opinion of the court, June 13th 1881.

The appellant's right to letters testamentary was received, not from any act of the legislature, but from the will of his mother, Mrs. Harberger, and to these letters he was entitled without regard to his pecuniary circumstances.

As his mother had a right to devise to him the whole of her property, had she been so disposed, so had she the right to commit to him the charge of it, in whole or in part, as to herself might seem proper; and this right no one can be permitted to call in question.

It is only after letters have been committed to an executor that the Acts of 29th March 1832, and of May 1st 1861, become operative, and until that time the Orphans' Court had no

[McCort's Appeal.]

jurisdiction, either to control the issuing of letters to him, or to compel him to give bail.

After that time, for any of the causes specified in the act, and for none other, the court may dismiss him or require sureties for the proper administration of the estate committed to his charge: Cohen's Appeal, 2 Watts 175; Webb v. Dietrich, 7 W. & S. 401.

Whilst, therefore, the Court below did that which was proper in refusing to vacate the letters testamentary, issued by the register to the appellant, Louis B. Harberger, it did wrong in imposing upon him the giving of a bond conditioned for the faithful performance of his duties as executor.

Such an order can only be imposed upon one "not being an inhabitant of this commonwealth," who claims the right to act as executor, but not upon one merely resident in a different county from that from the register's office of which the letters testamentary must issue. If the executor indicated by the will be an inhabitant of the state he is relieved from the necessity of giving a bond; for this reason, the decree of the Orphans' Court must be reversed.

It is now ordered and decreed that that part of the decree of the Orphans' Court requiring Louis B. Harberger to give an approved bond in the sum of $25,000, be reversed and set aside, and that that part of said decree which directs the register to issue letters testamentary to the said Harberger be affirmed. And it is further ordered, that the appellee pay the costs of this appeal.